IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDER RHODES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 22-101 |
| v. | ) |
| | ) |
| ALTHEA AZEFF, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

I.   Introduction

This case involves a myriad of common law defamation and privacy claims asserted by Alexander Rhodes against his mother Althea Azeff, and counterclaims asserted by Azeff against Rhodes. Presently before the Court are Defendant and Counterclaimant Azeff's (1) a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction and Improper Venue (Docket No. 46), with brief in support (Docket No. 47); and (2) Plaintiff and Counterclaim Defendant Rhodes' Motion to Dismiss the Amended Counterclaim (Docket No. 35), with brief in support. Both motions are fully briefed (Docket Nos. 35-1, 37, 43, 47, 48, 49) and are now ripe for disposition. The claims and counterclaims will be dismissed for the reasons set forth below

II.   Factual and Procedural Background

The Court will briefly summarize only those facts necessary to analyze the pending motions. The procedural posture of this case is somewhat unique. Rhodes is the estranged son of Azeff, his mother. Rhodes has been represented by counsel throughout the entire case. Rhodes' attorney filed the original complaint on January 14, 2022, and filed an Amended Complaint

(Docket No. 5) as a matter of course on January 31, 2022. *See* Fed. R. Civ. P. 15(a)(1). The Court eventually granted Plaintiff's motion for alternative service.

Azeff, acting *pro se*, filed an answer and counterclaim (Docket No. 21). At the same time, Azeff filed motions to dismiss the Amended Complaint for failure to state a claim, improper venue, and frivolousness. The Court denied those motions (Docket No. 27). Counsel entered their appearances on behalf of Azeff shortly thereafter, and they filed a Motion for Leave to File Amended Answer and Affirmative Defenses which the Court granted (Docket Nos. 30, 31).

Azeff's operative Amended Answer, Affirmative Defenses and Counterclaim is filed at Docket No. 32. The Counterclaim, however, merely incorporates the *pro se* pleading filed by Azeff at Docket No. 21, and states that Azeff "intends to pursue her Counterclaim *pro se*." Docket No. 32 ¶¶ 207-208.

The specific allegations about personal jurisdiction and the specific allegations set forth in the *pro se* Counterclaim are each discussed below where pertinent.

III.   Legal Analysis

A.   General principles

Azeff challenges this Court's authority to exercise personal jurisdiction over her. In *Stewart v. Stuckey-Smith*, No. CV224553SDWMAH, 2022 WL 17069966 (D.N.J. Oct. 28, 2022), report and recommendation adopted, No. 22-04553 (SDW)(MAH), 2022 WL 17069697 (D.N.J. Nov. 17, 2022), the Court summarized the applicable standard:

> plaintiff bears the burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over the moving party. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *DePaco v. Cofina Media, SA*, No. 21-14409, 2022 WL 3646616, at *2 (D.N.J. Aug. 24, 2022). If the court does not hold an evidentiary hearing on the motion to dismiss, as is the case here, the plaintiff need only establish a prima facie case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Unlike a motion to dismiss for failure to state a claim, a plaintiff may not rely solely on pleadings for contests of personal

jurisdiction, but must establish jurisdictional facts through sworn affidavits or other competent evidence.

*Id.* at *4.

Personal jurisdiction is measured at the time the complaint is filed. *In re Mobile Telecommunications Techs., LLC*, 243 F. Supp. 3d 545, 552 (D. Del. 2017). Azeff's activities and contacts with Pennsylvania prior to that time and afterwards are therefore largely irrelevant. Personal jurisdiction is analyzed for each defendant, for each claim. *Stewart*, 2022 WL 17069966 at *5 ("a court analyzes specific personal jurisdiction on a defendant-by-defendant and claim-by-claim basis") (citations omitted). As applicable to this case, the relevant contacts with Pennsylvania must be those of Azeff herself and not those of Rhodes or other individuals. Rhodes asserts only specific, not general, personal jurisdiction (Docket No. 48 at 13), and he must demonstrate that Azeff herself expressly targeted Pennsylvania. Moreover, Rhodes' allegations center on Azeff's purported defamatory statements published on the Internet which poses "unique doctrinal issues" for personal jurisdiction. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 194 (3d Cir. 2024). "[T]he mere placement of content on the Internet, by itself, does not subject the poster to personal jurisdiction in any state in which someone accesses that content." *Stewart*, 2022 WL 17069966 at *5.

### B. Allegations of Personal Jurisdiction

Rhodes avers that Azeff is a resident of Thurston County in the State of Washington. Amended Complaint ¶ 2. There are no direct averments in the Amended Complaint about personal jurisdiction. However, Rhodes pleads that venue is proper here in the Western District of Pennsylvania "because Defendant Azeff purposely directed her tortious activities against [Rhodes] in the State of Pennsylvania and caused harm to him in this venue." Amended Complaint ¶ 4. Rhodes conclusorily avers that Azeff "has long held significant and systematic ties to the

Pittsburgh area, including previously owning property, maintaining employment, and conducting business in the Pittsburgh area." *Id.*

Rhodes explains that this case arises out of false and defamatory statements published by Azeff online to the effect that Rhodes "engaged in a wide variety of illegal . . . unsavory . . . and immoral behaviors[,] include[ing] . . . attempting to murder" her and "numerous other people." Amended Complaint ¶¶ 5, 24. As context for these allegations, Rhodes further avers that he has created a peer support network to support those who have an addiction to pornography or who feel that they struggle with excessive porn use, that his efforts in this regard have been featured by numerous media outlets and publications, and that an unnamed neuroscientist who publicly advocates for porn use and regularly collaborates with adult industry entities and executives (identified in the Amended Complaint simply as the "Activist") defamed and targeted Plaintiff.[1] Amended Complaint ¶¶ 7, 10, 13-15. Rhodes avers that Azeff contacted the Activist on August 7, 2020, and subsequently joined the Activist's "defamatory campaign" against him. Amended Complaint, ¶ 23.[2] In doing so, Azeff wrote a "Defamatory Statement" that was produced by the Activist within her bankruptcy in response to a motion from a "third party" that Rhodes discovered on January 14, 2021. *Id.* Then, on May 27, 2021, Azeff self-published a "Defamatory Manifesto" online which included the republication of the "Defamatory Statement." Amended Complaint ¶¶ 24-25. The Defamatory Manifesto was listed for sale online, sold an unknown number of digital copies and remained listed for sale as of January 25, 2022. Amended Complaint ¶ 26. On and after June 3, 2021, Azeff "took to social media to reach out to a wide variety of individuals and

---

[1] Rhodes filed a lawsuit against the Activist and the Activist's for-profit company in this District (Civil Action No. 19-1366) (Docket No. 48 at 7). Rhodes' lawsuit settled under confidential terms on February 26, 2021. Amended Complaint, ¶ 22.

[2] The Court takes judicial notice that the Complaint in Civil No. 19-1366 avers that the Activist and her company were citizens of California. There is no indication in the Amended Complaint in this case that Azeff's contacts with the Activist occurred in Pennsylvania.

4

organizations . . . to relay false and defamatory information concerning [Rhodes]." Amended Complaint ¶ 120.  On or around June 4, 2021, Azeff changed her company's Twitter account's cover image to advertise the Defamatory Manifesto, linked to where to purchase it, and made other false and defamatory statements.  Amended Complaint ¶¶ 121-123, 130, 138, 140.  The appendixes to the Defamatory Manifesto reflect that Azeff sent emails to the New York Times and CNN.  Amended Complaint ¶¶ 111, 112.  A private investigator traveled to Washington state to interview Azeff.  Amended Complaint ¶ 109.

The remainder of the allegations in the Amended Complaint involve the contents of the Defamatory Statement and Defamatory Manifesto, Rhodes' conduct and character, and statements made by the Activist or a non-party named Doug Allen.  There are no other averments about Azeff's intentional targeting of Pennsylvania, other than her posting statements online.  In response to Azeff's motion, Rhodes submitted his own declaration (Docket No. 48-1), and a declaration by his attorney, Andrew Stebbins (Docket No. 48-2).  Although the declarations describe Rhodes' contacts with Pennsylvania and Azeff's alleged efforts to evade service, they do not contain any additional facts about Azeff's intentional targeting of Pennsylvania.

      C.  Recent decision in *Hasson*

On September 5, 2024 (after the briefing in this case was completed), the United States Court of Appeals for the Third Circuit issued a precedential decision in *Hasson*, 114 F.4th at 181, which sets forth the applicable analysis of personal jurisdiction.

The Court in *Hasson* reviewed the general principles governing specific personal jurisdiction:

> Specific jurisdiction exists when the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). A district court sitting in diversity can exercise personal jurisdiction over an out-of-state defendant to the extent

5

> permitted by the law of the forum state. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see also* Fed. R. Civ. P. 4(k)(1)(A). Pennsylvania's long-arm statute permits personal jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).
>
> The Supreme Court has articulated two tests for specific jurisdiction: (1) the "traditional" test—also called the "minimum contacts" or purposeful availment test, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); and (2) the "effects" test, *see Calder v. Jones*, 465 U.S. 783, 787 & n.6, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

*Hasson*, 114 F.4th at 186.

Under the traditional test, the plaintiff must show: (1) the defendant has "minimum contacts" with the forum such that it "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and "invoke[ed] the benefits and protections of [the forum's] laws"; (2) the plaintiff's claims must "arise out of or relate to" at least some of those contacts, evidencing "a strong relationship among the defendant, the forum, and the litigation"; and (3) the exercise of jurisdiction over the defendant must "comport[ ] with traditional notions of fair play and substantial justice" such that "the defendant 'should reasonably anticipate being haled into court' in that forum." *Id.* (citations omitted). Alternatively, the *Calder* "effects" test "requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Id.* at 187. The Court explained that the effects test and traditional test have distinct requirements and both tests should be considered. *Id.* at 189.

The *Hasson* Court concluded that plaintiffs in that case could not meet the effects test because defendant, Papa John's, did not expressly aim its conduct at Pennsylvania by operating a website that was accessible in the forum." *Id.* at 191. The Court noted that the plaintiffs failed to

allege, for example, that Papa John's website is accessible only in Pennsylvania; that the software at issue was deployed only to users who access the site in Pennsylvania; or that the content of the website is tailored in any meaningful way to Pennsylvanians. *Id.* at 190. The Court emphasized: "a defendant does not expressly target a forum merely by operating a website that is accessible there—even when the plaintiff alleges harm in that forum arising out of his engagement with that website." *Id.*

The Court also concluded that specific jurisdiction was lacking under the traditional test. The Court explained:

> To be sure, whether [the plaintiff's] claims "arise out of or relate to" Papa Johns' activities in Pennsylvania is a close call. *Ford Motor*, 592 U.S. at 359, 141 S.Ct. 1017 (citation omitted). As the Supreme Court recently clarified, while "[t]he first half of that standard asks about causation ... the back half ... contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362, 141 S.Ct. 1017. And "[t]he degree of relatedness required in a given case is inversely proportional to the overall intensity of the defendant's forum contacts." *O'Connor*, 496 F.3d at 320 (cleaned up). At first glance, this would seem to tip the jurisdictional scales in [the plaintiff's] favor given Papa Johns' considerable contacts in Pennsylvania. But when we scrutinize those contacts in the context of [the] wiretapping claims, we conclude that the "connection is too weak." *Hepp*, 14 F.4th at 208.

*Id.* at 193-94 (3d Cir. 2024). The Court concluded that although Papa John's purposefully availed itself of the Pennsylvania market by operating numerous pizza shops here, there was not a strong relationship among Papa John's, Pennsylvania and the deployment of the software at issue on Papa John's website. *Id.* at 193; *id.* at 195 ("Papa Johns' in-state restaurant sales and marketing activities, as alleged in the complaint, are insufficiently related to [the plaintiff's] wiretapping claims."). For example, the complaint did not allege any facts regarding the company's promotion of its website in Pennsylvania or that the website was featured in an advertisement during the Eagles' Super Bowl game. Although Papa John's promoted pizza in Pennsylvania, it did not promote the device (*i.e.*, its website) that allegedly caused harm. *Id.* at 194. The Court emphasized

7

that a plaintiff "must offer facts regarding Papa Johns' efforts to specifically direct or connect *Pennsylvanians* to the alleged harm." *Id*. (emphasis in original). The majority opinion held there is no personal jurisdiction over Papa John's and emphasized the "unique 'doctrinal questions' that internet transactions raise." *Id.* at 194.

    D.  Motion to dismiss for lack of personal jurisdiction

Rhodes' allegations averred in the Amended Complaint against Azeff are similar to the allegations against Papa John's in *Hasson* (although Azeff has far fewer contacts with Pennsylvania, since she moved out of the state in 2018). Rhodes alleges that Azeff wrote a "Defamatory Statement" and self-published a "Defamatory Manifesto" online, Amended Complaint ¶¶ 23, 24, and made several Twitter posts. The statement, manifesto and Twitter posts are available the same way regardless of the location from which the reader accessed the statements on the internet. It is clear, under Third Circuit law, that publishing statements on the internet does not subject the author to personal jurisdiction anywhere in the world from which a user could access the internet. Personal jurisdiction is lacking over Azeff.

The Amended Complaint fails under the *Calder* effects test because there are no allegations that Azeff expressly aimed her conduct at Pennsylvania. In *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007), the Court explained: "In order to satisfy the effects test, a plaintiff alleging retaliation must show additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the retaliatory conduct." As in *Hasson*, the Amended Complaint in this case failed to allege, for example, that Azeff's website is accessible only in Pennsylvania; that her statements and posts are accessible only by users who access the site in Pennsylvania; that the content of her statements are tailored in any meaningful way to Pennsylvanians; or that she

sells the Manifesto only in Pennsylvania. 114 F.4th at 190. Azeff's contacts with the Activist apparently occurred in California. As the Court held in *Hasson*, Azeff does not expressly target Pennsylvania merely by publishing statements on the internet that are accessible from Pennsylvania. *Id.*

In *Stewart*, applying the *Calder* effects test, the Court dismissed a similar defamation case for lack of personal jurisdiction. The *Stewart* Court explained that even assuming the plaintiffs felt the brunt of the defamation in New Jersey, they "failed to demonstrate that Defendant expressly aimed her conduct at the forum state." *Stewart*, 2022 WL 17069966 at *5 (citation omitted). The mere fact that it was foreseeable that Rhodes would suffer harm in Pennsylvania is not sufficient. *Id.* at *7; *accord Torre v. Kardooni*, No. CV224693SDWMAH, 2022 WL 17813069, at *6 (D.N.J. Nov. 29, 2022), report and recommendation adopted, No. 22-4693 (SDW)(MAH), 2022 WL 17812193 (D.N.J. Dec. 19, 2022) (dismissing for lack of personal jurisdiction where plaintiff failed to show that defamatory social media posts were targeted to reach the forum state in particular). As in *Stewart* and *Torre*, the Amended Complaint in this case alleges that Azeff posted statements on social media platforms that are aimed at a world-wide audience and Rhodes failed to show specific activity that Azeff expressly aimed her defamation at Pennsylvania.

Personal jurisdiction over Azeff also fails under the traditional test. The Court accepts that Azeff knew that her statements would impact Rhodes in Pennsylvania. As in *Hasson*, however, there are no facts pleaded in the Amended Complaint to support a strong relationship among Azeff, Pennsylvania and the publishing of her statement, Manifesto and Twitter posts on the internet. *Id.* at 193. As in *Hasson*, the Amended Complaint did not allege any facts regarding Azeff's promotion of her statements in Pennsylvania or that she otherwise targeted Pennsylvania when she posted those materials on the internet.

C. Jurisdictional Discovery

In *Power Home Remodeling Grp., LLC v. Stuckenschneider*, No. 2:23-CV-02880-JDW, 2024 WL 4336728 (E.D. Pa. Sept. 27, 2024), the Court explained that "[j]urisdictional discovery is appropriate when a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." *Id.* at *4 (punctuation and citation omitted).  In this case, Rhodes has not identified specific facts that he might be able to discover that would support the exercise of personal jurisdiction. The mere posting of allegedly defamatory statements online will not suffice, as explained in *Hasson*. Rhodes filed declarations in response to the motion to dismiss, but fell far short of meeting the *Hasson* standard.  There is no reasonable basis to believe that discovery would disclose facts to support the exercise of personal jurisdiction over Azeff.  Accordingly, jurisdictional discovery will not be authorized.  Because the Amended Complaint will be dismissed for lack of personal jurisdiction, the Court does not reach the parties' respective arguments about venue.

E.  Motion to dismiss counterclaims

The Amended Answer, Affirmative Defenses, Counterclaim filed by counsel for Azeff at Docket No. 32 incorporated the Counterclaim she set forth at pages 77-78 of her *pro se* pleading at Docket No. 21.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

To summarize the operative averments of the Counterclaim, Azeff asserts that Rhodes has a long history of threatening litigation for profit and that his filing of the underlying lawsuit in this case (which she calls a "SLAPP litigation") caused her damages in excess of $75,000, ¶ 1; Azeff suffered harm for having published a document on the internet, ¶ 2; Rhodes "includes a highly

defamatory statement from a third-party player," ¶ 3; "That third-party player made up the lies himself" and reported them to the FBI, ¶ 3; Rhodes and his attorney removed Azeff's copyright from every page of her manuscript, ¶ 4; and Azeff tried to hide from her son, but "Rhodes and/or his go-to lawyer took steps to find her in unethical ways (surveillance, hacking, etc.)," ¶ 5.

Azeff's counterclaim(s) must be dismissed for failure to state a cognizable claim. The "third-party player" and Rhodes' "go-to lawyer" are not named as third-party defendants. The allegations against Rhodes are woefully vague and conclusory. Among other shortcomings, there are no dates pled, no causes of action identified, and no averments by which causation of harm to Azeff may be inferred. Azeff also lacks standing to pursue Rhodes for alleged improper litigation against others.

The mere filing of the underlying complaint against Azeff in this case and the statements made therein cannot support a claim. *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 323 (1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse. Thus, statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court.") (citations omitted).

Azeff's anti-SLAPP[3] allegation fails to state a valid claim. Azeff failed to identify any source of authority for such a claim under Pennsylvania or federal law. The Court is not aware of such a law. *See Woods Servs., Inc. v. Disability Advocs., Inc.*, 342 F. Supp. 3d 592, 607–08 (E.D. Pa. 2018) (recognizing that a true conflict of laws exists because "New York has an applicable Anti-SLAPP statute and Pennsylvania does not").

---

[3] The acronym SLAPP stands for "Strategic Lawsuit Against Public Participation."

In ¶ 2 of the counterclaim, there is no allegation against Rhodes at all; the only act is that Azeff (apparently) published a document on the internet. In ¶ 3, there are no allegations to show why the actions of a "third-party player" can be attributed to Rhodes. In ¶ 4, the allegations fall far short of establishing a cognizable copyright infringement claim. The Court struggles to understand how Rhodes or his counsel would have obtained access to remove Azeff's copyright from every page of her manuscript.

In ¶ 5, the efforts to serve Azeff with notice of this lawsuit do not create a cause of action. *See Binder*, 442 Pa. at 323. The allegations of surveillance or hacking are vague and conclusory. In addition, the allegations do not show why the actions of a lawyer should be attributed to Rhodes.

Azeff's counterclaims will be dismissed with prejudice and without leave to amend. Azeff's response to the motion to dismiss her counterclaims (Docket No. 37) did not identify any valid claims. Azeff has already had two bites at the apple and further leave to amend would be futile and inequitable. This result is particularly appropriate given the Court's conclusion (explained above) that Rhodes' Amended Complaint should be dismissed because this Court lacks personal jurisdiction over Azeff.

IV. Conclusion

For the reasons set forth above, Azeff's motion to dismiss this case for lack of personal jurisdiction (Docket No. 46) will be granted; and Rhodes' motion to dismiss the counterclaims (Docket No. 35) will also be granted. The clerk will be directed to mark this case closed.

An appropriate order will be entered.

Dated: January 29, 2025

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf: All counsel of record